# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. CR409-216 |
| ) | |
| RONELL EGLIN, JR. ) | |

## REPORT AND RECOMMENDATION

Defendant Ronell Eglin is charged with possession with intent to distribute controlled substances and with several firearm violations arising from the warrantless stop of a vehicle in which he was riding as a passenger. Contending that the vehicle stop was made without probable cause, Eglin moves to suppress all evidence obtained by the police as a result of the vehicle's alleged illegal seizure. (Doc. 17.) For the following reasons, his motion to suppress should be **DENIED**.

## I. FACTS

Officer Gregory Sublett, a policeman with the Savannah-Chatham Metropolitan Police Department, was patrolling one of Savannah's

downtown precincts after dark on the evening of July 10, 2009. At the suppression hearing, he testified that he was headed southbound on Ferrill Street toward Augusta Avenue when he approached a "good size" red pickup truck that had stopped in the middle of the street directly alongside another vehicle that was parked next to the curb. Ferrill Street is mostly residential, and vehicles are typically parked next to the curb along both sides of the street, making the traffic lanes quite narrow.[1]

Officer Sublett pulled up behind the truck and determined that he could not safely maneuver around it, so he waited for it to move out of the way. At least two other southbound vehicles pulled up behind Sublett's patrol car as he waited. Officer Sublett testified that he waited behind the pickup for approximately two minutes before two passengers, a woman and a young child, exited the truck. Still the pickup did not move along. Not until some 25 seconds after letting out its passengers did the truck finally proceed on down Ferrill Street toward the Augusta

---

[1] Officer Sublett testified that vehicles "shouldn't" be parked along the curb but implied that this parking regulation was not generally enforced, at least along Ferrill Street. See SAVANNAH, GA., CODE § 7-1015 (ordinance prohibiting the parking of two or more vehicles abreast of each other upon all streets in the city).

Avenue intersection.[2] Officer Sublett followed the pickup and initiated a traffic stop in order to issue the driver a citation for impeding the flow of traffic in violation of O.C.G.A. § 40-6-202. During a subsequent search of the truck, police officers discovered a .45 caliber semi-automatic Ruger pistol bearing a filed-off serial number and approximately 33 grams of crack cocaine. (Def.'s Ex. 2 (police report).) Eglin, a passenger in the truck at the time of the stop, is charged with the unlawful possession of these items. (Doc. 1.)

## II. ANALYSIS

Eglin argues that the officer had no legal justification for stopping the pickup truck, as the government has failed to identify any Georgia traffic code provision that prohibited the driver of that truck from "momentarily" stopping his vehicle on a residential street to drop off

---

[2] Eglin, who also testified at the hearing, recalled a different sequence of events. He stated that the truck stopped for no more than 15 seconds to let the passengers out. Additionally, he testified that a car coming from the opposite direction managed to pass the truck without incident, so there was enough space for vehicles to move around it. The Court finds Officer Sublett to be the more credible witness on these points and finds specifically that the pickup truck was stopped in the street for some two and one-half minutes and that no vehicles were able to maneuver around the truck during this time.

passengers. (Doc. 17 at 1.) Because the officer was simply wrong in concluding that the conduct he observed violated Georgia law, his "mistake of law" failed to furnish objective grounds for probable cause or reasonable suspicion to justify the traffic stop. *See United States v. Chanthasouxat*, 342 F.3d 1271, 1279-80 (11th Cir. 2003) (an officer's mistake of law—based upon his erroneous belief that Alabama law prohibited driving a vehicle without an inside rearview mirror—could not provide reasonable suspicion or probable cause to stop a vehicle).

In electing to stop the pickup, Officer Sublett relied upon O.C.G.A. § 40-6-202, which generally prohibits stopping, parking, or standing a vehicle upon the roadway when it is "practicable" to do so off the roadway.[3] But as Eglin correctly pointed out in his initial brief, (doc. 17), this statute by its *express terms* applies only "outside" business or

---

[3] The statute provides:

> *Outside of a business or residential district*, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the roadway when it is practicable to stop, park, or so leave such vehicle off the roadway; but in every event, an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles, and a clear view of the stopped vehicle shall be available from a distance of 200 feet in each direction upon the highway.

O.C.G.A. § 40-6-202 (emphasis added).

4

residential districts. Since it is undisputed that the pickup was stopped within a residential area, Officer Sublett was mistaken in his belief that the pickup truck driver had violated this code section. *See Darwicki v. State*, 291 Ga. App. 239, 661 S.E.2d 859 (2008) (reversing conviction under § 40-6-202 where evidence failed to establish that defendant parked her car "outside" a business or residential district); *Southern Intermodal Logistics, Inc. v. Coleman*, 175 Ga. App. 853, 334 S.E.2d 888 (1985) (O.C.G.A. § 40-6-202 did not apply when traffic stop occurred within a business district).

In its responsive filing, the government in effect conceded that O.C.G.A. § 40-6-202 has no application to these facts. (Doc. 21.) It argued, however, that the officer's mistake of law was not fatal provided that the objective facts known to him furnished probable cause to stop the pickup for violating some other provision of the Georgia traffic code. On this point, the government is correct. The Supreme Court has made clear that an officer's "subjective reason for making [an] arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). That is, even if an officer lacks probable cause to arrest for the offense he charged

defendant with committing, the arrest is nevertheless valid if the facts known to the officer furnished probable cause to arrest for some other offense, whether or not that offense is "closely related" to the offense the officer had in mind. *Id.* at 153-155. Similarly, a traffic stop is not invalid because the officer relies upon the wrong section of the traffic code; rather, the stop is permissible as long as the facts known to the officer gave him probable cause to charge the driver with the commission of *any* traffic offense.

The government argues that the facts known to Officer Sublett provided him with probable cause to stop the pickup truck for violating O.C.G.A. § 40-6-184(a)(1), which prohibits driving "a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic, except when reduced speed is necessary for safe operation." (Doc. 21 at 3-5.) The government reasons that the traffic stop in this case was lawful, even though the officer relied upon the wrong provision of the traffic code to justify the stop, since the pickup was clearly impeding the flow of traffic. In his reply brief, Eglin asserts that the government's reliance upon O.C.G.A. § 40-6-184(a)(1) is both factually and legally untenable, for the Georgia traffic code contemplates that

drivers may temporarily stop their vehicles on the roadway for the purpose of loading or unloading passengers where it is safe to do so, and thus defendant violated neither § 40-6-184(a)(1) "[n]or any other statute" when he did precisely what Georgia law allowed him to do.[4] (Doc. 25 at 2.)

Immediately following the suppression hearing, defense counsel notified the Court of the existence of legal authority that might be considered adverse to the arguments raised in defendant's motion to suppress. (Doc. 27.) Counsel then followed up with a supplemental brief referring the Court to two provisions of the Georgia traffic code (not cited by the government) that arguably furnish a legal basis for the officer's decision to stop the pickup truck. (Doc. 29.) Counsel emphasized, however, that his client did not consider these statutes to be dispositive of his suppression claim.[5]

---

[4] Eglin points to numerous provisions of the Georgia code that give special allowances to motorists who temporarily stop their vehicles for the purpose of loading or unloading passengers. (Doc. 25 at 4 (citing O.C.G.A. §§ 40-1-1(40), (60); 40-6-202, 40-6-203).)

[5] The Court wishes to commend defendant's counsel, Mr. Tully Blalock, for his professionalism in acknowledging the existence of possible adverse legal authority. While the Rules of Professional Conduct require counsel to do no less, Georgia Rule of Professional Conduct 3.3, attorneys who enter the competitive arena of trial

Eglin first addresses O.C.G.A. § 48-6-200, which requires that "every vehicle stopped or parked upon a two-way roadway shall be stopped or parked with the right-hand wheels parallel to and within 12 inches of the right-hand curb or as close as practicable to the right edge of the right-hand shoulder." While it is undisputed that the pickup driver did not stop his vehicle in the manner prescribed by this statute, Eglin argues that the statute did not furnish a probable-cause basis for the traffic stop for two reasons: first, the pickup truck driver stopped "as close as practicable" to the right-hand shoulder, as allowed by the statute, and second, the traffic code's definition of "park" or "parking" includes an exception for vehicles that have haulted "temporarily" for the purpose of loading or unloading passengers. (Doc. 29 at 2.) Since other

---

combat sometimes forget that their professional obligation of loyalty to their clients can never be allowed to override their higher duty to the court and to the institution of justice. *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1546 (11th Cir. 1993) ("All attorneys, as 'officers of the court,' owe duties of complete candor and primary loyalty to the court before which they practice. An attorney's duty to a client can never outweigh his or her responsibility to see that our system of justice functions smoothly.") As a young attorney handling his first cases before any court, Mr. Blalock is especially deserving of praise for his exemplary conduct. (The Court wishes to note that immediately following the suppression hearing its own independent research located the very statutory provisions later cited by counsel in his supplemental brief. Mr. Blalock, of course, had no way of knowing that the Court would come across these statutes on its own, and its independent discovery in no way diminishes the tribute due to Mr. Blalock for his professionalism and adherence to the highest ethical standards of his profession.)

8

cars parked along Ferrill Street "prevent[ed] Eglin's vehicle from approaching the curb to unload its passengers," the pickup driver was entitled by the express language of § 40-6-200(a) to stop where he did. (Doc. 29 at 3.)

Eglin also refers the Court to another statute which provides that "no person shall stop, stand, or park a vehicle on the roadway side of any vehicles stopped or parked at the edge of a curb or street" except when necessary to avoid other traffic or upon the directions of a police officer or traffic control device. O.C.G.A. § 40-6-203(a)(1). This statute proscribes what is commonly called "double-parking," which is exactly what Officer Sublett observed the pickup driver do immediately prior to the traffic stop. Eglin argues, however, that this statute "does not unambiguously prohibit stopping temporarily in the road next to a parked vehicle to unload passengers . . . ." (Doc. 29 at 3.) By incorporating the definitions of parking and standing set forth elsewhere in the code, Eglin reasons that § 40-6-203 contemplates that drivers will be allowed to double-park temporarily for the purpose of unloading passengers. Thus, he argues, the officer had no basis for conducting a traffic stop.

The Court agrees that the two statutes cited by defense counsel in his post-hearing brief appear to be the traffic code provisions that are most applicable to the conduct at issue in this case. These statutes -- which require vehicles to stop or park within 24 inches of the curb and which prohibit double-parking -- both apply to the pickup that Officer Sublett encountered, for it is undisputed that the driver of that truck stopped his vehicle in the roadway adjacent to a vehicle already parked next to the curb. But even if the Court accepts Eglin's argument that these code sections provide an exception for motorists who stop "temporarily" in the roadway "for the purpose of and while actually engaged in" loading or unloading passengers,[6] it must nevertheless deny his motion to suppress. Eglin argues that these code sections do not

---

[6] The quoted language is found in O.C.G.A. § 40-1-1(40), (60), which define "parking" and "standing" as the halting of a vehicle "otherwise than temporarily for the purpose of and while actually engaged in receiving or discharging passengers." § 40-1-1(60). The Court notes that the traffic code's definition of "stop" or "stopping" contains no such exception for loading and unloading passengers. O.C.G.A. § 40-1-1(62). Since both § 40-6-200 and § 40-6-203 prohibit motorists from "stopping" next to a vehicle parked at the curb, and since that behavior is not excused for those engaged in unloading passengers, these statutes expressly capture the conduct of the pickup truck driver. Eglin argues, however, that since both statutes also prohibit "parking," the Georgia code is at best ambiguous as to whether double-parking is allowable when unloading passengers. The Court need not decide this question, however, for it is clear that Eglin cannot prevail even under his interpretation of the Georgia traffic code.

apply under the facts of this case. His argument assumes two facts that the government contests: (1) that the pickup's driver "temporarily" stopped his vehicle for only the period necessary to unload his passengers and was "actually engaged in" that process during the entirety of the stop, and (2) that it was not "practicable" for the pickup to pull next to the curb in order to accomplish the unloading of the passengers. Neither factual assumption is supported by the evidence in this case.

As noted earlier, the Court accepts Officer Sublett's testimony that after pulling behind the pickup truck that had stopped in the middle of Ferrill Street, he waited approximately two minutes before any passengers exited that vehicle. Then he had to wait another 25 seconds after the passengers got out. Under these facts, the driver of the pickup was not "actually engaged in receiving or discharging passengers" during the entire time that he double-parked his vehicle. Indeed, Officer Sublett testified that once the passengers began to exit the vehicle it took them only some 15 seconds to do so. And while "temporarily" is not defined in the Georgia Code, it was not unreasonable for the officer to infer that double-parking (and impeding traffic) for two and one-half minutes -- when it took those passengers only 15 seconds to exit the

11

vehicle -- was not truly "temporary" under the circumstances.[7]

Nor does the Court accept Eglin's contention that the pickup truck driver parked "as close as practicable" to the curb. Although it seems clear that there were vehicles parked along the street directly in front of the residence that the passengers wished to enter, Officer Sublett testified that there were other nearby spaces available that the driver could have pulled into. While the truck's passengers may have been required to walk a few more steps to reach their destination if one of these spots had been utilized, the slight inconvenience to his passengers did not justify violating the Georgia prohibition against double-parking under these circumstances. Thus, the Court rejects Eglin's factual assertion that the driver of the pickup truck was "prevented . . . from pulling to the curb to drop off [his] passengers." (Doc. 29 at 4.)

## III. **CONCLUSION**

The facts known to Officer Sublett furnished probable cause to stop

---

[7] There was no testimony that the passengers were elderly or infirm, so that it would have taken them an unusually long time to exit the truck. Further, the probable cause inquiry does not require an officer on the scene to disprove such a hypothetical, for he need only be aware of facts indicating a "fair probability" that a statutory violation has occurred. See *Illinois v. Gates*, 462 U.S. 213, 235, 244 n. 13 (1983); *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990).

the pickup truck for violating the Georgia traffic code's prohibition against double-parking and its requirement that vehicles must stop or park within 12 inches of the curb. The fact that Officer Sublett did not have these statutory provisions in mind at the time he made the traffic stop is simply irrelevant to the Fourth Amendment inquiry. Accordingly, Eglin's motion to suppress should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this _17Th_ day of December, 2009.

*/s/ M. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA